1  DAVID J. ZUGMAN
   California Bar No. 190818
2  1010 2nd Avenue, Suite 1800
   San Diego, California  92101-5008
3  Telephone:  (619) 699-5931
   Facsimile:  (619) 924-2201
4  dzugman@gmail.com

5  Attorney for Maria De Jesus Lopez

6

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10           (HONORABLE JANIS L. SAMMARTINO)

11  UNITED STATES OF AMERICA,      )    Criminal No. 16CR1585-JLS
                                   )
12        Plaintiff,               )    Date: June 16, 2017
                                   )    Time: 1:30 p.m.
13  v.                             )    Courtroom: 4A
                                   )
14  MARIA DE JESUS LOPEZ,          )    Supplemental brief in support of
                                   )    Lopez's motion to suppress
15        Defendant.               )
                                   )
16  To:    Alana W. Robinson, acting United States Attorney, Adriana E.
           Ahumada and Shane P. Harrigan, Assistant United States Attorney
17
           Maria De Jesus Lopez files this supplemental brief in support of Lopez's
18
    motion to suppress. This matter is scheduled for a hearing on June 16, 2017, at 1:30
19
    p.m. before the Honorable Janis L. Sammartino.
20

21

22

23

24

25

26

27

28

# Table of Contents

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Summary of the United States's Position. . . . . . . . . . . . . . . . . . . . . . . . . . .  2

The Science. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

There are no self-taught detector dogs  . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

      1.  The stimulus response problem. . . . . . . . . . . . . . . . . . . . . . . . . . .  5

      2.  The search command problem. . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

      3.  The 'Clever Hans' problem . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

      4.  Dogs' ability to distinguish individual people . . . . . . . . . . . . . . . . . .  7

      5.  This is junk science . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

      6.  The attacks on Expert Jimenez . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Pecky was doing exactly what she was trained to do: find drugs . . . . . . . . . . . .  9

This was an illegal search for drugs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Junk Science is dangerous . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

# Table of Authorities

**Cases**

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993) . . 12

*Illinois v. Caballes*, 543 U.S. 405, 125 S. Ct. 834 (2005) . . . . . . . . . . . . . . . . . . 11

*Lowry v. City of San Diego*, 818 F.3d 840 (9th Cir. 2016) . . . . . . . . . . . . . . . . . 7

*Potter v. Blue Cross Blue Shield*, No. 10-cv-14981, 2013 U.S. Dist. LEXIS 119391 (E.D. Mich. Mar. 30, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Rodriguez v. United States*, 135 S. Ct. 1609 (2015) . . . . . . . . . . . . . . . . . . . 11, 13

*United States v. Diaz-Rojas*, No. 16CR0423-MMA (KSC), 2016 U.S. Dist. LEXIS 121700 (S.D. Cal. Sep. 7, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Hebshie*, 754 F. Supp. 2d 89 (D. Mass. 2010). . . . . . . . . . . . . . 12

*United States v. Martinez-Fuerte*, 428 US 543 (1976) . . . . . . . . . . . . . . . . . . . 1, 2

*United States v. Morales-Armenta*, No. CR 15-938-TUC-CKJ, 2016 U.S. Dist. LEXIS 160210 (D. Ariz. Nov. 18, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Ruiz*, No. CR 16-121-TUC-CKJ, 2017 U.S. Dist. LEXIS 38063 (D. Ariz. Mar. 15, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Soto-Zuniga*, 837 F.3d 992 (9th Cir. 2016) . . . . . . . . . . . . . . . . 2

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416 (7th Cir. 2005). . . . . . 8

**Other Authorities**

http://traffic.calit2.net/border/border-crossing-wait-times.php . . . . . . . . . . . . . . . 1

http://www.newyorker.com/magazine/2014/11/24/drool . . . . . . . . . . . . . . . . . . . 3

http://www.scholarpedia.org/article/Operant_conditioning . . . . . . . . . . . . . . . . . . 5

http://www.sciencedirect.com/topics/page/Operant_conditioning . . . . . . . . . . . . 3

https://en.wikipedia.org/wiki/Clever_Hans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

https://seaworld.org/en/animal-info/animal-infobooks/animal-training/animal-training-basics . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

https://www.theguardian.com/lifeandstyle/2015/may/21/dogs-may-have-lived-with-humans-30000-years. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

https://www.wunderground.com/history/airport/KSAN/2014/8/12/DailyHistory.html?req_city=&req_state=&req_statename=&reqdb.zip=&reqdb.magic=&reqdb.wmo= . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Stephen Hawking, *A Brief History of Time* (London: Bantam, 1988), 178 . . . . . . 9

# Summary of Argument

1
2      *United States v. Martinez-Fuerte*[1] created an exception to the Fourth
3 Amendment's reasonable suspicion requirement for immigration checkpoints
4 located on the roads near the border upon which illegal immigrants might travel.
5 The 'special need' of immigration enforcement is what allows for this reduction in
6 Fourth Amendment rights.[2] The question before this Court is whether Border Patrol
7 is allowed to use the checkpoint to search a United States citizen for drugs. Border
8 Patrol Agent ('BPA') Barragan first noticed Lopez's vehicle while watching a
9 license plate reader and knew that Lopez had crossed the border about an hour
10 earlier on that hot Friday morning in June of 2016.[3] The average wait-time at
11 Calexico-West is an hour.[4] An experienced BPA like Barragan would know that
12 and he would know as a human being that no one is going to stay concealed in a
13 trunk or compartment for such a long time. People can be killed by that kind of
14 condition.[5]

15      The investigation of Lopez was a drug investigation with the immigration

16 _____

17     [1] *United States v. Martinez-Fuerte*, 428 US 543 (1976).

18     [2] *Id.* at 567.

19
20     [3] ECF 62: transcript of motion hearing, page 162, lines 13-23. Hereinafter it will be witness name with page and line reference e.g. Barragan, 162:13-23.

21
22     [4] The average wait at Calexico West is an hour: http://traffic.calit2.net/border/border-crossing-wait-times.php

23     [5] On August 12, 2014, Customs at San Ysidro found two undocumented
24 aliens unresponsive and soon dead after being crossed at the border in the trunk of
25 a sedan on a day where the temperature did not exceed 77 degrees. *See United States v. Zakov*, 14cr3066-AJB, clerk's record 1, complaint. The weather for
26 August 12, 2014 is available here:
27 https://www.wunderground.com/history/airport/KSAN/2014/8/12/DailyHistory.html?req_city=&req_state=&req_statename=&reqdb.zip=&reqdb.magic=&reqdb.w
28 mo=

1  inspection being both subordinate to and driven by the Border Patrol's desire to run
2  a drug dog on the car. Though there is conflict in the evidence about what Barragan
3  did – was he in the booth[6] or already in the line running Pecky on the car before
4  Meza had asked Lopez a question[7] – it really should not matter. Whether Border
5  Patrol is willing to admit it or not, they are using the checkpoint to search for drugs
6  and they are willfully expanding the immigration inspections in order to achieve
7  their goal. And they must know that they are distorting well-established science to
8  achieve their goal. It is dangerous to let the government contort science to give a
9  justification for a more expansive search than that authorized by immigration need.
10 The investigation of Lopez was done for the purpose of interdicting drugs and it
11 exceeded the permissible scope of a *Martinez-Fuerte* inspection.

## Summary of the United States's Position

13  Since the issuance of *United States v. Soto-Zuniga*,[8] the United States has
14 litigated the propriety of the checkpoint in a number of courts around the circuit
15 and Border Patrol Devaney has been their expert witness.[9] Devaney, by his own

---

19    [6]  Barragan, 159:12-19.

20    [7]  ECF 64, 9:18-23 ('I don't believe so. I was walking towards her, because I
21 Think -- I'm trying to remember, but sometimes they don't pull Up right next to
   us. We have to, like, walk a little bit. I Don't know why. But I think I walked a
22 little bit up to her Vehicle and then I asked her, but Mr. Barragan was already
23 doing his thing.')

24    [8]  *United States v. Soto-Zuniga*, 837 F.3d 992 (9th Cir. 2016).

25    [9]  Reported on LEXIS are: *United States v. Ruiz*, No. CR 16-121-TUC-CKJ,
26 2017 U.S. Dist. LEXIS 38063 (D. Ariz. Mar. 15, 2017); *United States v.
   Morales-Armenta*, No. CR 15-938-TUC-CKJ, 2016 U.S. Dist. LEXIS 160210 (D.
27 Ariz. Nov. 18, 2016); *United States v. Diaz-Rojas*, No. 16CR0423-MMA (KSC),
28 2016 U.S. Dist. LEXIS 121700 (S.D. Cal. Sep. 7, 2016).

testimony,[10] is the person that created and crafted this unique training protocol that allows Border Patrol to say that they are creating dual purpose dogs: drugs and concealed people.

## The Science

Dogs have lived with us for more than 10,000 years.[11] In the last 150 years, dogs have been at the center of the human endeavor to understand the animal brain. Modern dog training has a direct ancestral line to work of Ivan Pavlov, the thinker we all know for the famous (and apocryphal) 'dog salivates when it hears the ring of a bell.'[12] Pavlov's writings resonated with a young B.F. Skinner who would formalize the training of behavior based upon the 'stimulus to response' method implied by Pavlov's work. Skinner described the training technique of operant conditioning[13] which gives the methodology for getting an animal to exhibit a particular behavior (sometimes called a 'fixed action response'). It is successful across the animal kingdom all the way to humanity. Operant conditioning is an accepted methodology for teaching children with severe autism.[14]

Operant conditioning is science. It depends on the scientific method. The

---

[10]   Devaney, 116:10-12

[11] https://www.theguardian.com/lifeandstyle/2015/may/21/dogs-may-have-lived-with-humans-30000-years.

[12]   Paplov was originally interested in digestive excretions and he studied whether the food triggered the effect or whether the signal was initiated by swallowing. His experiment was to cut holes in the dogs necks so that they could eat the food, but then the food would fall out of the hole. As it turns out, swallowing is what starts the digestive engine. http://www.newyorker.com/magazine/2014/11/24/drool.

[13]   http://www.sciencedirect.com/topics/page/Operant_conditioning.

[14]   *See, e.g., Potter v. Blue Cross Blue Shield*, No. 10-cv-14981, 2013 U.S. Dist. LEXIS 119391, at *1 (E.D. Mich. Mar. 30, 2013).

1 training of Pecky for drugs well illustrates both how and why it works. Pecky is a

2 dog and she has a powerful sense of smell. Border Patrol uses that fact to train her

3 to give an indication whenever she smells something that Border Patrol spent

4 months fixing into her canine brain when she was a young dog. And to be sure that

5 she never forgets that smell, she is reminded about it for two days a month, every

6 month since her initial imprinting. Everyone – Ms. Lopez, the United States

7 Government, the defense expert, Andre Falco Jimenez, the Government's expert,

8 Matthew Devaney, and even Agent Barragan – agree that it is obvious and clear

9 how dogs can be taught to alert reliably to the odor of drugs.

10          Where we disagree is about whether the fact that dogs can be smell-trained

11 for drugs means that dogs can effectively search for persons who might be

12 concealed in vehicles at the port of entry. It is simply impossible based upon what

13 we know about dogs. Their nose is their guide to the world and they cannot just

14 shut it off. And there is no way that dogs are using the sense of hearing at the port.

15 Whatever excellence the dog has at hearing, it is useless in the noisy environment

16 of the checkpoint. The ambient noise of traffic, the air conditioners, and the

17 overhang keeping all the sound in – basic physics excludes the possibility of the

18 dogs being auditory detectors. Simply put, there is no natural sense that the dogs

19 could be using to search these cars for concealed humans.

20          Lopez will show that all of Pecky's training proves why this hypothesized

21 ability of dogs to search cars for concealed humans is absurd.

22                    **There are no self-taught detector dogs**

23          Under operant conditioning – the same method used to train the leviathans

24 of Sea World[15] – the rule is that when the dog exhibits the behavior you want, then

25 you reward (with food, toy, affection, et cet.) so that the dog links the behavior with

26 _____

        15

27 https://seaworld.org/en/animal-info/animal-infobooks/animal-training/animal-train

28 ing-basics.

1  the reward. In drug dog training, it is incredibly simple. Give the animal vast

2  amounts of pleasure when it encounters certain smells and the animal will get

3  excited whenever it smells that smell.[16] From that point, the dog (or any other

4  animal all the way down to bacteria[17]) will react when the smell triggers

5  anticipation of reward.[18] Devaney agreed to Lopez's exposition of the science.[19]

6       The concealed-person training described by Devaney violates the

7  fundamental precepts of operant conditioning.

8       1.  The stimulus response problem

9       Devaney describes the training as using the toy to excite the dog to go

10 around the vehicle around and around until it realizes there is a concealed human in

11 there. First, this inverts the stimulus response. If the dog is put into the excited toy

12 state to get the dog to go around the car again and again, you would have the

13 problem of fixing the behavior that the dog would want to keep circling cars until

14 she got rewarded.

15       2.  The search command problem

16       Both Devaney[20] and Barragan[21] testified that the dog would have to be given

17 ─────────────────

18    [16] Incidentally, this link between pleasure and behavior is also what drives
   humans to use drugs.
19

20    [17] 'Finally, it is interesting in this respect that even very simple animals
   show some kind of operant and classical conditioning. A recent study purported to
21 show discrimination learning in the protist Paramecium for example; and certainly
   a simple kind of operant behavior, if not discrimination learning, occurs even in
22 bacteria.' http://www.scholarpedia.org/article/Operant_conditioning.
23

24    [18] The bell at the end of a school day is one of the cherished sounds of
   childhood.
25

26    [19] Devaney, 134:13-19.

27    [20] Devaney, 99:9.

28    [21] Barragan, 186:13-16.

a 'search command' to go find concealed people. When Barragan testified about his command, he said he uses the German word 'voran.' Note that Barragan does not have a different command to search for people versus drugs. Barragan's single command tells Pecky to start smelling which is what she does on the car right before she alerts.

Pecky may well be a remarkable dog, but that does not give her the capacity to distinguish the generic search command for when it means 'smell for drugs' or 'use the mystical people power.' Put differently, if Pecky was smelling around to try to find people hidden from her view in vehicles, she would be regularly alerting to people in vehicle that she cannot see. But that does not happen.[22]

Devaney pointed out the implicit problem with the idea that dogs could be trained to go find the concealed people when he explained how detector dogs would often pull their handlers into pre-primary inspection because they caught a scent.[23] When the dog gets into a possible reward situation that triggers the 'fixed action pattern' of track and alert. If the dogs thought every vehicle might have a hidden human that might get them the reward they so richly desire, then they would be useless as drug dogs because they would be wasting time trying to explore every vehicle to look for that hidden person.

3. The 'Clever Hans' problem

Clever Hans was a horse that appeared able to do arithmetic. His trainer would ask Hans to add or subtract and Hans would reliably tap his hoof the correct number of times. It would turn out that Hans was not actually doing mathematics; he was watching his owner's face for the subtle clue that he had tapped his hoof the desired number of times. Once the facial clues were removed so was the horse's

---

[22] Barragan, 187:18-24.

[23] Devaney, 116:10-12.

1 | ability to do math.[24]

2 |      The training regime of Pecky regarding vehicles has an obvious 'Clever

3 | Hans' problem because the circumstance described by Devaney involves the

4 | presence of a bunch of people who know where the hidden person is.

5 |      4.  Dogs' ability to distinguish individual people

6 |      Lopez agrees that dogs can be trained to follow a scent. There are exactly

7 | two ways they do this. First, they might get on a scent trail. As Expert Jimenez

8 | described the training, a dog can be put into a 'scent cone' and track the animal that

9 | left the scent.[25] Lopez agrees that not only is it possible for a dog to be set on a

10 | scent, that process essentially coopts a required survival trait of wild canines:

11 | tracking down prey animals to eat them and especially those that are already

12 | wounded.

13 |      There is also the kind of people finding that we see in the Section 1983

14 | police dog bite cases. In *Lowry v. City of San Diego*,[26] the Court considered the

15 | case of a trained police dog that apparently could not tell the difference between an

16 | office worker asleep on a couch versus the suspected burglar thought to be in the

17 | building. In these 'bite and hold' instances, the dog is searching for someone,

18 | anyone, in the space to be searched. And while Border Patrol does not train the

19 | 'bite and hold' part, the search function of these people finder dogs is

20 | indistinguishable from the patrol dog that is going to explore a given space for

21 | humans.

22 |      5.  This is junk science

23 |      If there is one overarching principle in science, it is that for a rule to be

24 | scientific, it has to be falsifiable. For instance, a person may believe based on a host

25 | 

26 |     [24]  https://en.wikipedia.org/wiki/Clever_Hans.

27 |     [25]  Jimenez, 76:22-77:9.

28 |     [26]  *Lowry v. City of San Diego*, 818 F.3d 840 (9th Cir. 2016).

1  of different points that the universe is the product of intelligent design, but that

2  belief would not be a 'scientific' one because there is no way to test its validity.

3  And if cannot be falsified, it cannot be science. In the words of the Seventh Circuit

4  'conclusions that are not falsifiable aren't worth much to either science or the

5  judiciary.'[27] Even Devaney agreed that what he described about the 'concealed

6  person' detection was not science.[28]

7          Devaney's approach amounts to a tautology. Dogs sometimes find people

8  hidden in vehicles so it must be our training that causes that. The problem with this

9  argument is that it proves too much. One can put anything in as "training protocol"

10 and then claim that the training is what is causing the behavior. Instead of doing the

11 toy and circling of the car, Border Patrol could read to the dogs from the manual.

12 And, though the experiment has yet to be done, Lopez believes that the dogs who

13 heard the Border Patrol manual would be every bit as effective in finding concealed

14 people as the dogs put through Devaney's regime.

15          6.  The attacks on Expert Jimenez

16          Lopez called Expert Jimenez to testify about the science of dog training.

17 The Government spent the bulk of its cross-examination attacking Jimenez's

18 personal credibility with very little discussion of the science. This matters. When it

19 comes to matters of science, it should not matter who the person is that tells you

20 about it. As with many things scientific, there is a story about Einstein that well

21 sums up the point. Einstein's Jewishness and fame were an embarrassment to the

22 Reich and, being the propagandists that they were, the fascist scientific community

23 (which was substantial) came out with a pamphlet: 'One hundred authors against

24

25 _____

26     [27] *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir.

27   2005).

28     [28] Devaney, 135:15-20.

Einstein.'[29] When asked about it, Einstein said 'Why 100 authors? If I were wrong, then one would have been enough!'

The United States takes no issue with Jimenez's assessment of how dogs get scent-trained and the United States has no physical reality explanation of how a dog could be taught to do what it has repeatedly claimed it can do: be a diving rod for concealed humans at the checkpoint.

### Pecky was doing exactly what she was trained to do: find drugs

Lopez's argument leans heavily on the scientific reality of dog training to show that no one, least of all the head dog-trainer for Border Patrol, should be making the claim that dogs can be trained to search for concealed people in the conditions of the checkpoint. There is no 'concealed person' scent to fix them on.[30]

Devaney's explanation of the training is hollow and is meant only as a cover to allow the drug dogs to do what they are doing: searching for drugs outside the scope of immigration inspections at the checkpoint. The following facts establish this:

• Border Patrol regularly runs the dogs on the vehicles in preprimary;[31]

• Pecky's search could only have been for drugs;

• Barragan said he signaled Meza to give him enough time to run Pecky;

• Meza said that Pecky was at the vehicle before questioning started.

### This was an illegal search for drugs

The Court may recall that Lopez asked Barragan about the details of what

---

[29] Quoted in Stephen Hawking, *A Brief History of Time* (London: Bantam, 1988), 178.

[30] Devaney, 129:16-20.

[31] Devaney, 116:12-12; 125:26;

1  he saw on the license plate reader device.[32] Since Barragan learned that the car had

2  crossed the border an hour earlier that Barragan would also know that it was

3  crossed by Maria De Jesus Lopez, a United States citizen. Such knowledge would

4  make it ever more clear that BPA Barragan suspected that Lopez was drug-

5  smuggling, not alien smuggling. BPA Barragan said that he does not get the

6  information about the immigration status of the occupants of the car that just

7  crossed, just information on the vehicle.

8        If BPA Barragan is being accurate about what he sees, that is more telling

9  than nearly every other fact.[33] The highway 86 checkpoint is an immigration

10 checkpoint. If the United States wanted, it could give Barragan the information

11 about the person that physically crossed the vehicle. Why the agents in the booth

12 would be denied the information about whom actually crossed the vehicle along

13 with their immigration status appears to be designed to make sure that the

14 immigration inspection at the checkpoint lasts long enough for a drug inspection to

15 take place.

16       Expert Devaney actually gave the game away early in his testimony. When

17 asked about the mission of Border Patrol he said:

18           The mission of the Customs and Border Protection Canine Program
             is to supply canine resources and training, to support the overall
19           mission of CBP,  which is to thwart terrorism and interdict the
             smuggling and importation of controlled substances.[34]
20
21 Tellingly, not a word about immigration. This is the person that is setting up the

22 canine search parameters at the checkpoint and he believes that his mission goes

23 well beyond policing immigration at the checkpoint.

24       There are implications to the United States's position that it does not see.

25 ───────────────

26       [32]  Barragan, 175:22-176:9.

27       [33]  Barragan, 175:15-19.

28       [34]  Devaney, 85:2.

1  For instance, the United States is sure to argue that any search of Lopez's vehicle

2  occurred during an otherwise lawful immigration search and under *Illinois v.*

3  *Caballes*[35] running a drug dog during an otherwise lawful stop does not violate the

4  Fourth Amendment. Interestingly, part of the rationale allowing the dog sniff was

5  that narcotic detector dogs are unique because they by definition only smell

6  contraband.[36] Pecky, according to the United States, would not be part of that 'sui

7  generis' class of dogs that just smell contraband.

8          *Illinois v. Caballes* involved the specific scenario of a drug dog being run

9  during a traffic stop supported by reasonable suspicion and not extended in any

10 way. *Illinois v. Caballes* was clear that if the running of the dog had extended the

11 stop, then the Court would likely agree with the Illinois Supreme Court that the

12 stop would offend the Fourth Amendment.[37] The Supreme Court made good on

13 their speculation in *Rodriguez v. United States*[38] which holds that if a stop is

14 extended so that the police can run a drug dog, the stop violates the Fourth

15 Amendment. The critical question for the Supreme Court is 'not whether the dog

16 sniff occurs before or after the officer issues a ticket [ . . .], but whether conducting

17 the sniff 'prolongs'—i.e., adds time to—'the stop.'[39]

18         In Lopez's case, it is clear that the Border Patrol was adding time to Lopez's

19 stop in order to get a chance to run their drug detector dog. That is sufficient under

20 *Rodriguez* for this Court to suppress.

21 _____

22         [35] *Illinois v. Caballes*, 543 U.S. 405, 409, 125 S. Ct. 834, 838 (2005).

23         [36] *Id.* at 409 ('. . . a canine sniff by a well-trained narcotics-detection dog

24 [is] 'sui generis' because it 'discloses only the presence or absence of narcotics, a
   contraband item.'') (quotation and citation omitted).

25

26         [37] *Id.* at 408.

27         [38] *Rodriguez v. United States*, 135 S. Ct. 1609, 1616 (2015).

28         [39] *Id.* (quotation omitted).

## Junk Science is dangerous

One of the problems with junk science is that it is metastatic. As was covered at the motion hearing, the dog's sense of smell is so good that they can smell stuff that people would never imagine like e coli bacteria or cancer cells in people. But just because they have the ability to lock on particular chemical structures does not – and cannot – mean that they can decide which smells belong where. Consider what happened in *United States v. Hebshie*,[40] a federal court arson case where a man was sentenced to a fifteen-year minimum mandatory. The question in this arson case was whether the arson detector dog had correctly identified the origin of the fire because of an alert to the presence of accelerant. The trial court would ultimately grant a Section 2255 motion because of the dog expert testimony that bears a striking resemblance to the Government's dissembling about the powers of Pecky.

> In *Farm Bureau Mut. Ins. Co. v. Foote*, 341 Ark. 105, 14 S.W.3d 512, 518 (Ark. 2000), for example, the Supreme Court of Arkansas affirmed the trial court's exclusion of a canine handler who sought to testify about 'the alleged superior ability of his canine partner, Benjamin, to detect the presence of accelerants after a fire,' that he could discriminate between different types of chemicals,' and that he had an accuracy rate of '100%.' The court held:
>
> > [W]e conclude that the proffered testimony concerning the dog's alleged superior ability to detect the presence of accelerants does not pass muster using either the *Daubert*[[41]] or *Prater* [*v. State*, 307 Ark. 180, 820 S.W.2d 429 (Ark. 1991)] analysis. Farm Bureau simply did not make any showing regarding the scientific validity of the evidence. For instance, [the canine handler] did not produce the study allegedly conducted by [the director of the Florida State Crime Laboratory, cited by the canine handler], so there was no way of ascertaining the techniques used or the potential rate of error. *Id.* at 520.[42]

---

[40]  *United States v. Hebshie*, 754 F. Supp. 2d 89, 119 (D. Mass. 2010).

[41]  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993).

[42]  *United States v. Hebshie*, 754 F. Supp. 2d at 116.

*Hebshie* is important for two reasons. First, the *Hebshie* Court rejects the "dogs have a mystical ability to tell the difference" between the smells of different accelerants which is just like the problem of having dogs distinguish between the smell of present versus concealed humans. Second, *Hebshie* demonstrates the danger of allowing this kind of psuedo-science in the halls of justice.

## Conclusion

Immigration checkpoints are for immigration and the evidence shows that Border Patrol contorts its immigration inspection to allow for the drug inspection. That is the kind of unconstitutional prolonging forbidden by *Rodriguez v. United States*. This Court should suppress the evidence from the stop of Lopez at the Highway 86 checkpoint.

Respectfully submitted,

S/David Zugman
Dated: May 4, 2017                         DAVID J. ZUGMAN
Attorney for Lopez

**Certificate of Service**

1

2       I the undersigned declare under penalty of perjury, that I am over the age

3 eighteen years and I am not a party to the above-entitled action. I have caused

4 service of

5       supplemental brief

6 on the following parties by electronically filing the foregoing with the U.S. District

7 Court for the Southern District of California using its ECF System, which

8 electronically notifies them.

9       I declare under penalty of perjury that the foregoing is true and correct.

10 Executed on May 4, 2017          S/David Zugman
                             DAVID J. ZUGMAN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28